**FILED**
United States Court of Appeals
Tenth Circuit

JUN 13 1995

PUBLISH

PATRICK FISHER
Clerk

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA, )
)
    Plaintiff-Appellee, )
)
v. ) No. 94-3061
)
ARMANDO NELSON PELLIERE, )
)
    Defendant-Appellant. )

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 93-40003-03-SAC)

F.G. Manzanares of Topeka, Kansas for Defendant-Appellant.

T.G. Luedke, Assistant U.S. Attorney (Randall K. Rathbun, United States Attorney, with him on the brief), Topeka, Kansas, for Plaintiff-Appellee.

Before SEYMOUR, Chief Judge, BALDOCK and BRORBY, Circuit Judges.

SEYMOUR, Chief Judge.

Armando Pelliere was charged in two counts of a multi-count indictment with conspiracy to possess crack cocaine with intent to distribute in violation of 21 U.S.C. § 846, and with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).  Pursuant to a plea agreement, Mr. Pelliere pled guilty to the possession charge, and the government dismissed the conspiracy charge.  In sentencing Mr. Pelliere, the district court imposed a three-level enhancement for Mr. Pelliere's role in the offense and a two-level enhancement for obstruction of justice.  On appeal, Mr. Pelliere asserts that both enhancements are erroneous.  We reverse and remand for resentencing.

I.

Mr. Pelliere was charged with participating in a wide-ranging drug conspiracy involving numerous coconspirators who imported cocaine from Panama and distributed it in Junction City, Kansas.  When authorities arrested the leader of the organization in 1990, alleged coconspirator Marcos Torres took his place.  Mr. Torres subsequently left the country for several months in late 1991 during which time Mr. Pelliere allegedly remained involved in the conspiracy.  The count to which Mr. Pelliere pled guilty charged that he, along with Mr. Torres and others, possessed with intent to distribute one kilo of cocaine on June 18, 1992.

Mr. Pelliere was arrested on February 8, 1993. In a detention hearing before a federal magistrate judge, Mr. Pelliere, through his attorney, denied any involvement in the conspiracy. Shortly after the plea, customs special agent Jim Kanatzar interviewed Mr. Pelliere. Mr. Pelliere again denied any involvement with the organization before 1992, although he admitted committing some drug transactions in March of 1992. In 1993 during an interview with a probation officer, Mr. Pelliere likewise denied being a party to any conspiracy.

Following an evidentiary hearing, the district court accepted the presentence report's recommendation that Mr. Pelliere's sentence be enhanced two levels under U.S.S.G. § 3C1.1 for obstruction of justice and three levels under U.S.S.G. § 3B1.1(b) for his role in the offense as a manager or supervisor. These enhancements resulted in an offense level of 31 which, together with Mr. Pelliere's criminal history category of I, resulted in a sentencing range of 108-135 months. The court sentenced Mr. Pelliere to 108 months.

II.

The government must prove by a preponderance of the evidence any sentence enhancement it asserts the court should grant. See United States v. Torres, Nos. 94-6128, 94-6140, 94-6152, 1995 WL 242649, at *12 (10th Cir. April 25, 1995). The presentence report

originally recommended a two-level enhancement for obstruction of justice under section 3C1.1 on the basis of Mr. Pelliere's alleged involvement in an attempt to threaten a grand jury witness who was also involved in the conspiracy. When Mr. Pelliere objected to the evidence of this incident as a fabrication by the witness, the government responded that although no evidence directly linked Mr. Pelliere to the threat, the witness' assumption that Mr. Pelliere was involved was well-founded. In addition, the government asserted for the first time that the enhancement was also warranted on the basis of statements Mr. Pelliere made to Agent Kanatzar and to the magistrate judge denying his involvement in the conspiracy.

> Section 3C1.1 provides:
>
> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

The commentary makes clear that the guideline is applicable where a defendant provides "materially false information to a judge or magistrate," Commentary, Application note 3(f), U.S.S.G. § 3C1.1, and/or provides "a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense," id. at Application note 3(g). After hearing evidence from a probation officer and from Agent Kanatzar, the district court determined

that an enhancement for obstruction of justice was proper. In so doing, the court specifically declined to base the enhancement on Mr. Pelliere's alleged involvement in witness-tampering, stating that

> the court will not be basing the enhancement on this factor. The court finds sufficient additional evidence to warrant this enhancement. This includes the defendant's proffer made to the U.S. Magistrate Judge, Ronald C. Newman, in which the defendant requested pretrial release because he had never sold or delivered any drugs at any time. In addition, based on Agent Kanatzar's testimony today, the court finds the defendant provided a materially false statement to a law enforcement officer that significantly impeded the prosecution of the instant case as it relates to two of the codefendants. The court finds his statements to be material because . . . if believed, they would tend to influence or affect those issues before the court.

Rec., vol. IV, at 87-88. Relying on United States v. Urbanek, 930 F.2d 1512, 1515 (10th Cir. 1991), Mr. Pelliere argues on appeal that the district court erred because the statements upon which the court relied were simply an example of the "exculpatory no."

In Urbanek, we held that the sentencing judge committed clear error by enhancing the defendant's sentence for obstruction of justice on the basis of statements that "amounted to nothing more than a denial of guilt or an 'exculpatory no.'" Id. We pointed out that the guidelines specifically prohibit a sentencing court from using such statements to enhance a sentence under section 3C1.1, citing to the commentary that states:

> This provision is not intended to punish a defendant for the exercise of a constitutional right. <u>A defendant's denial of guilt</u> (other than a denial of guilt under oath that constitutes perjury), <u>refusal to admit guilt or provide information to a probation officer</u>, or refusal to enter a plea of guilty <u>is not a basis for application of this provision</u>. In applying this provision, the defendant's testimony and statements should be evaluated in a light most favorable to the defendant.

Commentary, Application note 1, U.S.S.G. § 3C1.1 (emphasis added).

The presentence report describes the statements upon which the government and the court relied as follows: "During an interview with U.S. Customs Agent Jim Kanatzar following his plea in this case on October 1, 1993, Pelliere denied ever selling any drugs at any time. In addition, the defense attorney also made this proffer to the Court during a detention hearing before the Magistrate Judge." Rec., vol. V, at 23.[1] The testimony of Agent Kanatzar at the sentencing hearing likewise demonstrates that the statements made to him which he felt hindered his investigation were no more than denials of guilt or refusals to provide information. <u>See</u> rec., vol. IV, at 45, 48, 49. For example, Agent Kanatzar testified: "He didn't provide any information so it hindered my investigation." <u>Id.</u> at 48. Moreover, the district court said only that "defendant provided a materially false statement to a law enforcement officer that significantly impeded

---

[1] The government presented no evidence that these statements were made under oath and constituted perjury.

the prosecution of the instant case as it relates to two of the codefendants, id. at 88, without naming the codefendants.

On this record, we simply must hold that the government failed to establish by a preponderance of the evidence that Mr. Pelliere obstructed justice in the manner asserted by the government to the sentencing court. Because denials of guilt or refusals to talk cannot serve as the basis for an obstruction of justice enhancement, the district court erred in enhancing Mr. Pelliere's sentence under section 3C1.1.

III.

The presentence report originally recommended a three-level enhancement under U.S.S.G. § 3B1.1(b) based on Mr. Pelliere's role in the offense as a manager or supervisor of criminal activity that involved five or more participants or was otherwise extensive. In so doing, the report relied on information from witnesses who described Mr. Pelliere as second-in-charge behind Marcos Torres and who stated that Mr. Pelliere took over supervision of the operation during the time Mr. Torres was in Panama. Mr. Pelliere filed objections to the report, pointing out that other witnesses, including an undercover agent, had identified Mr. Scott-Sanjur, a named coconspirator in the conspiracy count, as the person who was second-in-command and who took over for Mr. Torres.

During the sentencing hearing, the probation officer who prepared the report testified that he was relying on information provided by Agent Kanatzar. Mr. Pelliere relied on reports of witness interviews tending to establish that Mr. Scott-Sanjur's role in the conspiracy was as Mr. Pelliere described it and tending to show that Mr. Pelliere's role was that of a middleman or delivery man. Agent Kanatzar in turn testified that he was relying on statements by other witnesses whom he believed to be more credible. None of the witnesses relied upon by either side appeared at the hearing; all of them apparently took some part in the criminal activity, some pled, some testified before the grand jury, and some were granted immunity.

In determining that Mr. Pelliere's sentence was subject to enhancement under section 3B1.1(b) for his role in the offense, the district court stated:

> Although [defense counsel] does point out several statements that were given to law enforcement officers regarding the defendant's role as well as the role of Scott Sanjur, the government has been able to produce grand jury testimony from three individuals that state that the defendant was second in command. The court does not feel that the exact hierarchy structure need be established in this case; however, the court does believe that the defendant did occupy some type of supervisory role in this illegal activity. Whether he was second in command only part of the time and Scott Sanjur part of the time is not absolutely critical to the determination. The court finds that the defendant did occupy a managerial or supervisory role and a three-point enhancement is warranted under the provisions of USSG 3(b)1.1(b). . . .

Rec., vol. IV, at 85-86. On appeal, Mr. Pelliere argues that the evidence does not establish his role as manager or supervisor.

Enhancement under section 3B1.1(b) applies to a defendant who "exercised some degree of control or organizational authority over someone subordinate to him in the drug distribution scheme." United States v. Roberts, 14 F.3d 502, 524 (10th Cir. 1993) (citing United States v. Reid, 911 F.2d 1456, 1464 (10th Cir. 1990), cert. denied, 498 U.S. 1097 (1991)). We review the district court's fact findings under the clearly erroneous standard and the application of the guidelines de novo. Id. at 522-23. In Roberts, we pointed out that "'[i]n enhancing a defendant's sentence based on his role in the offense, a district court must make specific factual findings as to that role.'" Id. at 522 (quoting United States v. Stevens, 985 F.2d 1175, 1184 (2d Cir. 1993)). We further pointed out that when a district court's findings "do not fulfil the specific criteria mandated" by section 3B1.1, a reviewing court may not supply those specifics on the basis of the prosecutor's statements at sentencing, the probation officer's response to the defendant's objections to the presentence report, or other evidence in the record. Id. at 523.

As quoted above, the district court concluded that it did not need either to accept the hierarchy proposed by the government or determine whether Mr. Pelliere was second-in-command at least part of the time in order to decide whether an enhancement was

warranted under section 3B1.1. Although the court nonetheless concluded that an enhancement was proper, it articulated no specific findings to support its decision. Here, as in Torres, "appellate review of the propriety of applying this serious enhancement is hindered by the absence of a clear picture of the reasoning employed by the sentencing court." Torres, 1995 WL 242649, at *13 (footnote omitted). Findings are not adequate if "they do not constitute evidence of decision-making authority or control over a subordinate necessary to conclude [the defendant] was a supervisor or manager." Roberts, 14 F.3d at 524. The court's failure to make those findings here has left our appellate review to "flounder in the 'zone of speculation.'" United States v. Slater, 971 F.2d 626, 633 (10th Cir. 1992) (citations omitted).

Specific fact findings are particularly vital in this case. The grand jury testimony the government introduced on the control issue related mainly to the activities of Marcos Torres and was hearsay. Moreover, some of this evidence was directly contradicted by the report of undercover agent Angel Cruz stating that a reliable informant told him Scott-Sanjur was second-in-command and that other informants told him Scott-Sanjur took over when Torres was arrested. See rec., supp. vol. II, gov't ex. 1. We recognize that the district court may use reliable hearsay testimony in determining an appropriate sentence. See United States v. Roach, 978 F.2d 573, 576 (10th Cir. 1992); U.S.S.G. § 6A1.3(a); see also United States v. Reid, 911 F.2d 1456, 1464

(10th Cir. 1990) (hearsay statement cannot be used in sentencing absent some minimal indication of reliability other than mere allegation). Here, however, the court did not specify what particular hearsay statements it was relying upon, nor did it make any assessment of reliability.

Moreover, because the use of hearsay in sentencing raises due process concerns, "the defendant [must] be given adequate notice of and an opportunity to rebut or explain information that is used against him." United States v. Beaulieu, 893 F.2d 1177, 1181 (10th Cir.), cert. denied, 497 U.S. 1038 (1990). The lack of specificity here frustrates both Mr. Pelliere's ability to challenge the sentencing court's determination on appeal and our ability to undertake a meaningful review.

In sum, we conclude that the district court erred in enhancing Mr. Pelliere's sentence under section 3C1.1 for obstruction of justice. We further conclude that the court failed to make adequate fact findings with respect to enhancement under section 3B1.1 based on Mr. Pelliere's role in the offense. We therefore remand to the district court to vacate Mr. Pelliere's sentence and resentence in light of this opinion.

REVERSED and REMANDED.